2002 UT 103

**Ben P. TOONE, Kent D. Fuller, Robert J. Fuller, Haynes R. Fuller, and Roger E. Cannon, Plaintiffs and Appellants,**

v.

**WEBER COUNTY, a political subdivision, the Weber County Commission, and Commissioners Glen Burton, Ken Bischoff, and Camille Caine, Mark Decaria, Weber County Attorney, Rulon Jones, an individual, and John & Jane Does 1–10, Defendants and Appellees.**

No. 20010142.

Supreme Court of Utah.

Oct. 25, 2002.

---

Robert B. Sykes, Salt Lake City, for plaintiffs.

Jody K. Burnett, Salt Lake City, for defendants.

Michael V. Houtz, Ogden, for defendant Rulon Jones.

## INTRODUCTION

HOWE, Justice:

¶ 1 Plaintiffs Ben P. Toone, Kent D. Fuller, Robert J. Fuller, Haynes R. Fuller, and Roger E. Cannon brought this action seeking a judicial determination that a sale of land between defendant Weber County and defendant Rulon Jones was void under the County Land Use Development and Management Act (CLUDMA), Utah Code Ann. §§ 17–27–101 to –1003 (1995 & Supp.1996), and was also void under Utah Code Ann. § 17–50–312 (2001)[1] for inadequate consideration. The trial court granted summary judgment to defendants.

## BACKGROUND

¶ 2 On March 11, 1997, Weber County sold 160 acres of mountain land known as the Wolf Creek Park property to Rulon Jones, a local resident, for $200 an acre. On the day of the sale, the County posted an agenda for a county commission meeting which included notice of the sale. The County gave no other public notice and held no hearing before selling the property to Jones. Before the sale, the property was used by members of the public for recreational purposes, including hunting. After purchasing the property, Jones restricted hunting on the land to those who pay him a fee.

¶ 3 On October 25, 1999, over two and one-half years after the County conveyed the property to Jones, plaintiffs, former users of the property, commenced this action in district court against Weber County, various County officials, and Jones. Plaintiffs contended that Weber County violated provisions of CLUDMA and sold the property for inadequate consideration. Defendants responded, denying the allegations and asserting that plaintiffs' action was barred by the thirty-day limitation period in section 17–27–1001 of CLUDMA. Thereafter, both parties moved for summary judgment. The trial

---

**1.** At the time of the land sale in this case, section 17–50–312 was codified as Utah Code Ann. § 17–5–242 (1995). In 2000, it was recodified with only stylistic changes. Utah Code Ann. § 17–50–312 (2001) (amendment notes). We cite the current version in this opinion.

court ruled in favor of defendants. Plaintiffs appeal.

## STANDARD OF REVIEW

■ ¶ 4 Whether the trial court properly granted summary judgment is a question of law, reviewed for correctness. *Bakowski v. Mountain States Steel, Inc.,* 2002 UT 62, ¶ 14, 52 P.3d 1179. The proper interpretation of a statute is also a question of law, which we review for correctness. *Johnson v. Redev. Agency,* 913 P.2d 723, 727 (Utah 1995).

## ANALYSIS

¶ 5 Plaintiffs contend that the trial court erred by ruling that their action was time-barred by section 17–27–1001(1) and (2)(a) and that section 17–27–305(2) does not require a sale of county land to be preceded by the county planning commission's review and recommendation. Additionally, plaintiffs assert that the sale was illegal under section 17–50–312 because it lacked adequate consideration supported by an independent determination of the value of the exchange. We address each issue in turn.

## I. THE SCOPE OF THE STATUTE OF LIMITATIONS IN SECTION 17–27–1001

■ ¶ 6 Section 17–27–1001 provides in part:

(1) No person may challenge in district court a county's land use decisions made under this chapter or under the regulation made under authority of this chapter until that person has exhausted all administrative remedies.

(2) Any person adversely affected by any decision made in the exercise of the provisions of this chapter may file a petition for review of the decision with the district court within 30 days after the local decision is rendered.

(3) The courts shall:

(a) presume that land use decisions and regulations are valid; and

(b) determine only whether or not the decision is arbitrary, capricious, or illegal.

The trial court ruled that this section precluded plaintiffs from challenging the County's conveyance of the land to Jones. It correctly held that this section limits the time in which a party may seek review of a county's "land use decisions" to thirty days. However, the court erred by characterizing the land sale in this case as a "land use decision."

¶ 7 CLUDMA gives counties the power to regulate land use through the enactment of ordinances and regulations, and through the granting of permits relating to zoning and subdivisions. *See generally* § 17–27–204(a) & (e) (granting county planning commissions the power to "administer provisions of the zoning ordinance" and to "recommend approval or denial of subdivision applications"); § 17–27–401 (granting counties the authority to "enact a zoning ordinance establishing regulations for land use and development"); § 17–27–707 (granting boards of adjustment limited power to grant zoning variances); § 17–27–801 (granting counties the power to "enact a subdivision ordinance requiring that a subdivision plat comply with the provisions of the subdivision ordinance"); § 17–27–805 (granting counties the power to approve subdivision applications). In addition, CLUDMA mandates the process by which these decisions should be made. *See, e.g.,* §§ 17–27–402 to –403 (stating the requirements for adoption and amendment of zoning ordinances); §§ 17–27–801 to –805 (stating the requirements for adoption and amendment of subdivision ordinances and for approval of plats). CLUDMA also provides an administrative review process in certain circumstances. *See* § 17–27–704 (outlining the process for obtaining review of zoning decisions).

¶ 8 It is to these substantive decisions, made in compliance with the proper procedures, that the term "land use decisions" in section 17–27–1001 unambiguously refers. *See* § 17–27–1001(1) to (3) (mandating that a party must exhaust all administrative remedies before challenging a "land use decision" and directing a court to presume that "land use decisions and regulations are valid" and to determine only whether "the decision is arbitrary, capricious, or illegal"). Standing alone, violations of CLUDMA cannot correctly be considered "decisions" by the county, unless the county, through official action, decided to disregard the Act. However, even if

a county were to take the unusual step of officially choosing to violate the Act, such a choice still would not fall under section 17–27–1001 because it would not have been made "in exercise of the provisions" of CLUDMA. § 17–27–1001(2).

¶ 9 Accordingly, where a party seeks to challenge a county's substantive land use decision, such an action falls under section 17–27–1001 and is subject to the thirty-day period of limitations. Section 17–27–1001 does not apply, however, where a party seeks relief from a county's violation of the provisions of CLUDMA because a county's failure to follow the procedures mandated by CLUDMA is not a "land use decision" made under CLUDMA. In such instances, a party may bring an action under the next following section, section 17–27–1002, which provides county land owners with the right to institute actions based on "violations" of the Act and, tellingly, does not contain a thirty-day limitation on such actions. Section 17–27–1002 provides in part:

(1)(a) A county, county attorney, or any owner of real estate within the county in which violations of this chapter or ordinances enacted under the authority of this chapter occur or are about to occur may, in addition to other remedies provided by law, institute:

(i) injunctions, mandamus, abatement, or any other appropriate actions; or

(ii) proceedings to prevent, enjoin, abate, or remove the unlawful building, use, or act.

¶ 10 Plaintiffs do not challenge a land use decision made in exercise of the provisions of CLUDMA but instead assail Weber County's failure to follow certain procedural requirements contained therein, which were triggered by its intent to sell land. As Weber County notes, the actual authority to sell county land comes not from CLUDMA, but from section 17–50–312, which provides:

(1) A county may purchase, receive, hold, sell, lease, convey, or otherwise acquire and dispose of any real or personal property or any interest in such property that it determines to be in the public interest.

. . . .

(3) The county legislative body shall provide by ordinance, resolution, rule, or regulation for the manner in which property shall be acquired, managed, and disposed of.

Consequently, a decision to sell land is not a land use decision under CLUDMA. Nothing before us indicates that the County made any other official decision that would invoke the thirty-day limitation found in section 17–27–1001(2)(a). Nor, as noted above, can the alleged failure to comply with the procedural requirements of CLUDMA be considered a land use decision. Consequently, the thirty-day period of limitations does not apply to plaintiffs' action. The trial court erred by holding otherwise.

## II. SECTION 17–27–305 OF CLUDMA

¶ 11 Section 17–27–305 is found in part three of CLUDMA, which requires counties to create and to maintain a land use planning tool, designated a "general plan," in accordance with certain requirements of the Act. *See* §§ 17–27–301 to –307. Section 17–27–305 provides:

(1) After the legislative body has adopted a general plan or any amendments to the general plan, no street, park, or other public way, ground, place, or space, no publicly owned building or structure, and no public utility, whether publicly or privately owned, may be constructed or authorized until and unless:

(a) it conforms to the plan; or

(b) it has been considered by the planning commission and, after receiving the advice of the planning commission, approved by the legislative body as an amendment to the general plan.

(2)(a) Before accepting, widening, removing, extending, relocating, narrowing, vacating, abandoning, changing the use, acquiring land for, or selling or leasing any street or other public way, ground, place, property, or structure, the legislative body shall submit the proposal to the planning commission for its review and recommendations.

(b) If the legislative body approves any of the items contained in Subsection (a), it shall also amend the general plan.

Applying the rules of statutory construction and relying heavily on the provisions of section 17–27–305(1), the trial court interpreted section 17–27–305(2) to mean that a sale of county land need not be preceded by referral to the county planning commission for its review and recommendation unless there is to be a change in the use of the property. Here, the Wolf Creek Park property had a recreational use that was not going to be changed by Jones. We conclude, however, that the trial court's interpretation was incorrect.

¶ 12 When we interpret a statute, we look first to its plain language; only if the statute's language is ambiguous do we rely on other methods of statutory interpretation. *See City of Hildale v. Cooke,* 2001 UT 56, ¶ 36, 28 P.3d 697; *State v. Burns,* 2000 UT 56, ¶ 25, 4 P.3d 795; *Vigos v. Mountainland Builders, Inc.,* 2000 UT 2, ¶ 13, 993 P.2d 207. Subsection 17–27–305(2)(a) mandates that the county's legislative body shall submit a proposal to the planning commission for its review and recommendations when "accepting, widening, removing, extending, relocating, narrowing, vacating, abandoning, *changing the use,* acquiring land for, or *selling* or leasing any street or other public way, *ground, place, property* or structure." (Emphasis added.) This language is unambiguous, clearly stating without qualification that a proposed sale must be submitted to the planning commission before county land is sold. This plain language renders without merit defendants' argument that subsection (2)(a) applies only when an action would change the use of a property. The changing of a property's use is only one of twelve designated legislative actions to which subsection (2)(a) applies. Consequently, the county was required to refer the proposed sale to the planning commission prior to taking action on it.

¶ 13 Defendants contend that the sale of Wolf Creek Park was made under the authority of section 17–50–312, which is not contained in CLUDMA, and that, consequently, section 17–27–305 should not be interpreted to require submission of a proposed sale to the planning commission. Defendants are correct that a sale of land by a county is made pursuant to authority granted by section 17–50–312, which is not

contained in CLUDMA. Section 17–50–312, set out earlier in this opinion, explicitly authorizes a county to "purchase, receive, hold, sell, lease, convey, or otherwise acquire and dispose of real or personal property or any interest in such property that it determines to be in the public interest." The only limitation imposed by that section is that any sale of property shall be in accordance with county ordinances, resolutions, rules, or regulations. In the instant case, the relevant Weber County ordinance did not require the county commission to obtain the planning commission's review and recommendation nor the holding of a public hearing on the proposed sale. Furthermore, CLUDMA neither grants a county the power to sell land nor places restrictions on its ability to sell land. This does not mean, however, that CLUDMA is entirely inapplicable.

¶ 14 CLUDMA was enacted in 1991, many years after section 17–50–312 was enacted, and must therefore be considered the most recent expression of legislative intent. Thus, if the county, in exercising its authority to sell land pursuant to section 17–50–312 undertakes to sell public property, CLUDMA is triggered, and the county must follow the procedural requirements of section 17–27–305(2), and its ordinances must comport therewith. In such instances, the statutes work in tandem; they are not mutually exclusive. Section 17–50–312 gives counties the authority to sell; section 17–27–305(2) of CLUDMA mandates that sales of public property be accompanied by certain procedural requirements. Thus, section 17–50–312, which gives the county the power to sell the land, and section 17–27–305, mandating referral of the proposed sale to the planning commission, both apply. Because the County did not submit the proposed sale of the Wolf Creek Park property to its planning commission for review and recommendation, the sale is void.

¶ 15 Defendants argue that reference to the planning commission serves no purpose where no change in the use of the property is sought or authorized. However, where the legislature has clearly spoken within its authority to make laws, as it has done here, our

inquiry ends. We do note, however, that reference to the planning commission does trigger a public hearing and citizen input regarding any proposed sale. *See* §§ 17–27–303 to –305.

### III. ADEQUATE CONSIDERATION UNDER SECTION 17–50–312

¶ 16 Finally, plaintiffs assail the legality of the Wolf Creek Park transaction for lack of adequate consideration. Relying on *Municipal Building Authority v. Lowder*, 711 P.2d 273 (Utah 1985), plaintiffs argue that the county did not comply with the requirement implicit in section 17–50–312 that a sale of land be for adequate consideration supported by an independent determination of the value of the exchange. *Id.* at 283 (holding that under the predecessor to section 17–50–312 "a county cannot ... dispose of public property without receiving adequate consideration"); *see also Price Dev. Co. v. Orem City*, 2000 UT 26, ¶ 34, 995 P.2d 1237 (stating that "when a legislative body enters into a transaction where public money or property is given in exchange for something, the good faith legislative judgment ... needs to be supported by documentation within the legislative record of an independent determination of the value of exchange"). We do not need to address this issue, however, because we have voided the sale of property on another ground. Therefore, we express no opinion on it.

### CONCLUSION

¶ 17 We reverse the judgment of the trial court and grant summary judgment to plaintiffs, voiding Weber County's sale of the Wolf Creek Park property to Jones because of the failure to first submit the proposed sale to the planning commission for its review and recommendations.

¶ 18 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice RUSSON, and Justice WILKINS concur in Justice HOWE's opinion.